FILED Rec'd 1/27/12 JSW
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 25 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

EDWIN TIRADO,

                         Plaintiff,

    -against-

MICHAEL J. ASTRUE, Commissioner of Social Security,

                        Defendants.

------------------------------------------------------------------- X

10-CV-2482 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

ORDER & OPINION

ROSS, United States District Judge:

Plaintiff Edwin Tirado ("plaintiff") seeks judicial review of a decision of the Commissioner of Social Security that he was not disabled under the Social Security Act ("Act") for purposes of receiving Supplemental Security Income ("SSI") benefits. The Commissioner has moved for judgment on the pleadings, and plaintiff has cross-moved. For the reasons explained below, the court denies the Commissioner's motion, grants plaintiff's motion insofar as it seeks reversal of the Commissioner's decision, and remands the case for further proceedings.

## BACKGROUND

Plaintiff protectively applied for SSI on June 30, 2006. Administrative Record ("AR") at 163-68.[1] He claimed that he had become disabled under the Act as of February 1, 2002, and was unable to work due to back and leg problems. AR 168-78. Plaintiff's claim was denied on February 26, 2007, and plaintiff requested a hearing. AR 79, 83-91. An initial hearing was scheduled for March 26, 2008, but plaintiff was granted additional time to seek representation. AR 360-68. However, plaintiff subsequently appeared pro se at his July 30, 2008 hearing before

---

[1] Plaintiff also applied for disability insurance benefits, but he did not meet the insured status requirements for them. See AR 165.

1

the Administrative Law Judge ("ALJ"). AR 60-75.

At the hearing, plaintiff testified that he was arrested in 1993 and 1997 for selling drugs and that he was incarcerated from 1993 to 1996 and 1997 to 2001. AR 70. He stated that he received his GED in prison and worked thereafter as an equipment manager at the prison gym. AR 70-71. After leaving prison, as a condition of his parole, plaintiff got a job at a furniture center. AR 71-72. Plaintiff's alleged disability onset date, February 1, 2002, closely followed his being hit by a subway train in late January 2002. AR 356-57. Plaintiff testified that he did not apply for benefits until 2006 because the pain did not bother him much after the accident so he went back to work moving furniture but that the pain increased over time and he had to leave work. AR 66-68. He stated that he thereafter applied for SSI at the prompting of a welfare doctor. AR 68. Plaintiff testified that he could not work because he had had surgery on his left knee after the accident; had torn ligaments in his right knee, which regularly swelled up; and had nerve damage. AR 72-74. He testified that could not lift up his shoulders and that doing so caused him pain, that he could not lift or play with his thirty-three-pound child, and that he experienced pain in his spine and lower back after walking three blocks. AR 73-74. Plaintiff also stated that he had seen Dr. Livshits from 2003 to 2004, that he stopped seeing him because of a change in insurance, but that he had recently begun seeing Dr. Livshits again after changing back to his former insurer. AR 68-69.

Plaintiff's claim was denied in a decision by the ALJ dated August 19, 2008. AR 52-59. The ALJ determined that plaintiff had not engaged in verifiable substantial gainful activity, for the purposes of the decision, because his work as a furniture delivery man was off the books. AR 54. The ALJ found that plaintiff had suffered from a severe impairment, namely a right paracentral herniation at C5-6, and noted that, although plaintiff had undergone back and left

knee surgery, plaintiff had not undergone medical treatment between 2004 and June 2008. AR 54. The ALJ concluded that plaintiff had the residual functional capacity to perform a range of light work based on (1) plaintiff's having worked from 2003 to 2005 delivering furniture;[2] (2) a lack of evidence in the record of any treatment from 2004 to present, the absence of which spoke to the lack of severity of plaintiff's condition; (3) the fact that plaintiff was not taking prescribed medications; and (4) the consultative examiner's having reported no more than mild limitations. AR 54, 57. The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not credible to the extent they were inconsistent with the residual functional capacity assessment. AR 55. In making this credibility assessment, the ALJ noted that the discrepancy between plaintiff's statement that he was able to play sports and work before his injury and his lack of meaningful work history prior to 2002 "substantially reduce[d]" his credibility. AR 55. The ALJ stated that plaintiff's testimony that he had worked carrying furniture from 2003 to 2005 also "considerably dilute[d] his claim that he has been unable to work since 2002 nor carry or lift thirty-three pounds." AR 55.

In reaching her conclusion regarding plaintiff's residual functional capacity, the ALJ reviewed the medical evidence in the record. With regard to medical evidence from plaintiff's alleged disability onset date to present, the ALJ noted an emergency room report documenting plaintiff's injuries from the train collision and observed that there were no further records until 2003, when plaintiff began physical therapy for knee left knee pain, which continued into 2004 and resulted in surgery. AR 54-55. The ALJ stated that an evaluation in January 2004 showed that plaintiff had a limited range of motion and diminished strength in his right knee. AR 56. The ALJ observed that there were no treatment records for the remainder of 2004 to present and

---

[2] The ALJ found noteworthy that claimant testified that he stopped working in 2005 due to pain but waited until 2006 to apply for disability benefits. AR 57.

3

that "the record [wa]s oddly devoid of medical evidence since [plaintiff's] application date in 2006 and [wa]s limited to MRI reports." AR 55-56. The ALJ reviewed plaintiff's evaluation through the Arbor WeCare Program in June 2006, which she found to be mostly normal, and gave considerable weight to the consultative opinion of Dr. Weiss, who opined that plaintiff suffered only mild limitations. ER 56-57. The ALJ also noted that plaintiff testified that he had started treatment with Dr. Livshits in June 2008, three months after his initial hearing was scheduled. AR 56.

The ALJ determined that, considering plaintiff's age, education, work experience, and residual functional capacity, there exist jobs in significant numbers in the national economy that plaintiff can perform. AR 58. She therefore found that plaintiff was not disabled under the act and denied plaintiffs' claims for benefits. AR 59. Plaintiff requested review of this decision by the Appeals Counsel, which affirmed the ALJ's denial of benefits on March 26, 2010. AR 1-2. Plaintiff thereafter filed the instant appeal.

## DISCUSSION

I. Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff is not disabled.

> Under the Social Security Act, a "disability" is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is of such severity that he is unable to perform his previous work and, given his age, education, and work experience he is not able to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is

4

disabled, the Commissioner is to consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that had lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such impairment was demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v. Apfel, 1998 WL 788780, at *5 (S.D.N.Y. November 12, 1998) (citing cases).

The Social Security Administration ("SSA") has promulgated a five step process for evaluating disability claims. See 20 C.F.R. § 404.1520. The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of

establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Bluvband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

The court's role in reviewing the decisions of the SSA is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

II.     Review of the ALJ's Decision

In her August 19, 2008 decision, the ALJ committed legal error by failing to adequately develop the record by contacting plaintiff's treating physicians. The ALJ also erred insofar as she based her adverse credibility finding on plaintiff's attempt to work. The court thus finds that reversal and remand is warranted.

"The ALJ generally has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Where plaintiff appears pro se, the ALJ is under a "heightened duty" to develop and explore the relevant facts. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). The duty of an ALJ to develop the record is also particularly important when the record lacks adequate information from a treating physician, as it is well-established that an ALJ must given controlling weight to a treating physician's opinion as to the nature and severity of an alleged impairment if that opinion is well supported by medical findings and it is not inconsistent with other substantial evidence in the record. Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118

(2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); see Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002). In carrying out this duty, the ALJ must make every reasonable effort to help an applicant get reports from his medical sources, 20 C.F.R. §§ 404.1512(d)(2), 416.912(d), and must seek additional evidence or clarification when the report from plaintiff's medical source "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). An ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity. See LoRusso v. Astrue, No. 08-CV-3467, 2010 U.S. Dist. LEXIS 33487, at *21 (E.D.N.Y. March 31, 2010).

The record shows that plaintiff reported visiting his primary care physician, Dr. Emmanuel Fashakin, for chronic back pain and swollen knees in 2006 and 2007 and indicates that Dr. Fashakin prescribed plaintiff with a cane, brace, and pain medication. AR 175, 196, 206. The ALJ noted that the record was lacking in medical evidence from this period and took into account this absence of medical evidence documenting plaintiff's condition in assessing plaintiff's residual functional capacity. AR 57. In concluding that plaintiff was capable of light exertion, the ALJ gave the consultative opinion of Dr. Weiss "considerable weight," based in part on the fact that the record contained no treating physician opinion. AR 57. However,

> when the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature and the severity of the claimed disability.

Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991). The ALJ did not discharge this

obligation in the instant case and, therefore, could not properly predicate a non-disability determination on the sparse nature of the record she did not adequately develop.

The ALJ similarly erred in neglecting to solicit an opinion from Dr. Aleksandr Livshits, a treating physician specialist, as to plaintiff's residual functional capacity. Although, in her decision denying benefits, the ALJ characterized Dr. Livshits as a doctor with whom plaintiff had only recently started visiting, AR 56, plaintiff testified at the hearing that he saw Dr. Livshits from 2003 to 2004 and, after an insurance-induced hiatus, had recently begun seeing him again. AR 68-69. That Dr. Livshits treated plaintiff over a period of time is also evidenced by a report that Dr. Livshits prepared on September 1, 2008, and which plaintiff attached as additional evidence to his request for review by the Appeals Counsel. See AR 1-2, 42-47. The report indicated that plaintiff saw Dr. Livshits for the first time on July 9, 2003, and had most recently visited the doctor on August 28, 2008.[3] AR 42. Because Dr. Livshits was a treating physician of plaintiff's, the ALJ had a duty to seek an opinion from him as part of her obligation to develop the record. Remand is thus appropriate. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (observing that the court has often remanded for further development of evidence where the administrative record is incomplete).

The court also finds error in the reasoning provided by the ALJ for its adverse credibility determination with regard to plaintiff's statements concerning the intensity, persistence, and limiting effects of plaintiff's alleged impairments. The ALJ found that plaintiff's off-the-books

---

[3] In denying plaintiff's request for review of the ALJ's decision, the Appeals Counsel stated that the additional medical record evidence attached to plaintiff's request, including the report by Dr. Livshits, did not provide a basis for changing the ALJ's decision because the reports, which post-dated the ALJ's decision, were "new information …about a later time." AR 1. This determination was erroneous. As plaintiff notes, Dr. Livshits's report was written approximately two weeks after the ALJ's decision, and "[t]here is nothing in Dr. Livshits' report that would limit his findings to the date it was created." Pl.'s Mem. of Law at 18. Moreover, to the degree the report may be read as retrospective in nature, "[i]t is well-settled that the 'treating physician rule' applies to retrospective diagnoses, those relating to some prior time period during which the diagnosing physician may or may not have been a treating source, as well as to contemporaneous ones." Martinez v. Massanari, 242 F. Supp. 2d 372, 377 (S.D.N.Y. 2003) (citing, inter alia, Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000)).

8

job delivering furniture from 2003 to 2005 did not qualify as substantial gainful activity but paradoxically concluded that plaintiff's testimony that he had worked in that capacity diluted his claim that he had been unable to work since 2002. AR 54-55. While such a long period of working may justify a determination that plaintiff was not disabled for the entire period of alleged disability, it does not support a finding that plaintiff was not disabled at any point after 2002. Plaintiff's alleged onset date on his application coincided with his train accident, but, at the hearing, plaintiff stated that his alleged ailments were not particularly bothersome directly following the accident. Plaintiff testified that he therefore returned to work but that the pain later became so bad that he was forced to stop. Courts in this circuit have generally found that failed attempts to work generally add to a plaintiff's credibility rather than undermine it. See Dillin v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 55321 (N.D.N.Y May 17, 2010) (instructing ALJ, on remand, to consider whether plaintiff's complaints of disabling pain were entitled to greater weight based upon unsuccessful attempts to return to work); Meyers v. Astrue, 681 F. Supp. 2d 388, 404 (W.D.N.Y. 2009) ("Plaintiff's undisputed attempt to engage in retraining and return to work . . . reinforces her credibility."). On remand, the ALJ shall take into account what impact, if any, plaintiff's attempted return to work has on plaintiff's credibility concerning the intensity, persistence, and limiting effects of his impairments from when he stopped working in 2005.

## CONCLUSION

Defendant's motion for judgment on the pleadings is denied. Where "there are gaps in the administrative record, or the ALJ has applied an improper legal standard," remand is the appropriate remedy to permit additional consideration. Pratts, 94 F.3d at 39. The case is therefore remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated:   January 25, 2011
         Brooklyn, New York